### GLASGOW SHIPOWNERS CO., Limited, v. BACON.

(District Court, S. D. New York. October 14, 1904.)

**1. SHIPPING—CHARTER HIRE—FOUL BOTTOM RETARDING SPEED.**

In the absence of any speed warranty in a charter, or provision for docking and cleaning, a claim for charter hire is not defeated by an unclean condition of the vessel's bottom, retarding her speed, which the charterer knew of when the contract was made, · or should have expected from the circumstances attending the hiring.

In Admiralty. Suit to recover charter hire.

Convers & Kirlin, for libellant.
Wheeler, Cortis & Haight, for respondent.

ADAMS, District Judge. This action was brought by the Glasgow Shipowners Company, Limited, to recover from Daniel Bacon the sum of $1,262.99, claimed to be due for hire of the steamship Nile, under a charter party dated July 2, 1903. This amount was deducted from the hire for the whole period during which the steamship was in Mr. Bacon's service, on a claim that the vessel had not, owing to a foul bottom, attained the speed she should have made during a voyage from Boston and New York to Progresso, Mexico, and Caibarien, Cuba, and return to New York.

The testimony shows that the vessel's bottom was somewhat foul, which retarded her progress, and the question to be determined is whether such fact entitles the charterer to make a deduction.

There was no speed warranty in the contract but the charterer relies upon the following clauses:

"Witnesseth, That the said owners agree to let, and the said Charterers agree to hire the said steamship from the time of delivery, for one round trip from the U. S. to the West Indies and or Mexico and or Central America and or Windward Islands and or North Coast South America and back. * * *

1. That the Owner shall provide and pay for all provisions, wages and Consular shipping and discharging fees of the Captain, Officers, Engineers, Firemen and Crew; shall pay for the insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, and maintain her in a thoroughly efficient state in hull and machinery for and during the service."

The claim is that at the time of delivery to the respondent, the bottom was exceedingly foul, which fact was known to the owner, and that by reason thereof, the steamship's normal speed was so much reduced that she required more than usual time to make the voyage and burned more coal than she should have done, thereby increasing the respondent's expense on the trip to the deducted amount.

The difficulty with the contention is that the condition of the vessel's bottom, which no doubt delayed her somewhat, was known to the charterer when he made the contract and accepted the vessel or should have been expected. A clause of the printed form of charter provided:

"22. That as the Steamer may be from time to time employed in tropical waters during the term of this Charter, Steamer is to be docked, bottom cleaned and painted whenever Charterers and Master think necessary, at least once in every six months, and payment of the hire to be suspended until she is again in proper state for the service."

This clause was stricken out before the instrument was executed, which distinguishes this case from Falls of Keltie S. S. Co. v. United States & Australasia S. S. Co. (D. C.) 108 Fed. 416, cited by the respondent.

The charterer here knew that the vessel had not been docked for several months and could have inferred from that fact that her bottom would not be perfectly clean during the period for which he chartered her. Adverse weather conditions and currents were met with, which with the loading and trimming of the vessel would account for a part of the delay. It can not be said to be established that the vessel was unseaworthy in any sense available to the charterer as a defence to hire for a part of a period during which she was used, with an actual or imputed knowledge on the charterer's part that she had not a clean bottom from the beginning. There is no question of the good order of her machinery and with respect to the hull, she was as efficient as the charterer had a right to expect.

Decree for the libellant for $1,262.99 with interest.